UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Luis Diaz,　　　Appellant,<br><br>　　　v.<br><br>Northwestern Memorial Hospital,<br><br>　　　Appellee. | Case No. 22-cv-4861<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

In this bankruptcy appeal, Appellant Luis Diaz challenges the bankruptcy court's order resolving his motion for sanctions. *See* [1]. Because it appears Appellant won that motion, and because the court committed no error in fixing the appropriate sanction, this Court affirms the bankruptcy court.

**I.　Facts and Procedural History**

Appellant filed a voluntary petition under Chapter 7 of the Bankruptcy Code on May 2, 2022[1] and listed "Northwestern Memorial" as one of his creditors. [11] at 8. On June 17, 2022, post-petition, Plaintiff ordered medical equipment from Northwestern Memorial Healthcare ("NMH") through his doctor; the equipment was supposed to arrive within five days. [11] at 8. When it did not, Appellant contacted his doctor's office to inquire about the status of the equipment, and staff there advised him that a "hold" had been placed on the order based upon past due invoices. *Id.*

---

[1] This was not Mr. Diaz' first petition; far from it: the docket shows that he filed Chapter 13 petitions on December 12, 1996; March 12, 2001; December 9, 2003; July 31, 2014; and January 6, 2015, and filed prior Chapter 7 petitions on January 20, 2000; August 9, 2001; May 11, 2005; February 24, 2010; and August 20, 2013. [4-2] at 2.

1

Appellant complained, advising the doctor's office staff about his petition; the staff referred him to NMH's billing department, which, in turn, advised Appellant that the equipment would not be released until he satisfied two outstanding invoices, already in collection. *Id.*

On July 22, 2022, Appellant moved for sanctions in his bankruptcy proceeding, arguing that NMH violated the automatic stay by attempting to collect on the past due invoices. *Id.* The bankruptcy court held an initial hearing on the motion on August 3, and a substantive hearing on the merits of Appellant's motion on August 31, 2022, after allowing NMH to file a written response to the motion. At the latter hearing, after NMH represented that it had sent Appellant the medical equipment free of charge, the bankruptcy court ruled as follows:

> Okay. Mr. Diaz, under these circumstances, that's exactly what I was going to order Northwestern to do. I believe that those are the appropriate sanctions, which is because of this potential misunderstanding, maybe a violation of the automatic stay vis-à-vis the representations about the prepetition debt, I believe that's an appropriate sanction; and with Northwestern supplying those supplies that were ordered by your doctor for free of charge, I believe that they have fulfilled their obligations under this motion.
>
> I'm not awarding any other sanctions. I'm not awarding any attorney fees. It's an unfortunate situation, but going forward, obviously, Mr. Diaz, if you need supplies, your Chapter 7 doesn't cover that. It covers the prepetition, and that's been forgiven. So Northwestern is not getting paid for that, and now they're not getting paid for the one postpetition. But that's done. That's over. That's the penalty, if you will, for what happened here.
>
> I appreciate everybody's help, but that will conclude the matter. So the motion for sanctions is being denied because effectively Northwestern has complied with what they were going to be asked to be doing here, and that concludes the matter.

[5-1] at 4–5.

Unsatisfied, Appellant filed this appeal September 9, 2022. *See* [1]. In his opening brief, he argues that the bankruptcy court was wrong to deny his motion and wrong to decline his sanctions request. *See* [11]. He argues that the court should have imposed monetary sanctions to cover his costs and attorneys' fees,[2] and assessed punitive damages.[3]

## II. Standard of Review

Pursuant to 28 U.S.C. § 158(a)(1), this Court has jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy court. This Court reviews the bankruptcy court's legal findings *de novo* and its factual findings for clear error. *In re Miss. Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014). Additionally, this Court reviews the bankruptcy court's sanctions order for an abuse of discretion. *In re Salem*, No. 17-CV-1500, 2017 WL 11607219, at *5 (N.D. Ill. Dec. 14, 2017), *aff'd sub nom. Est. of Wattar v. Fox*, No. 17-1615, 2023 WL 3033494 (7th Cir. Apr. 21, 2023), *opinion revised and superseded*, 71 F.4th 547 (7th Cir. 2023), *and aff'd sub nom. Est. of Wattar v. Fox*, 71 F.4th 547 (7th Cir. 2023) (citing *In re Rinaldi*, 778 F.3d 672, 676 (7th Cir. 2015)). A court "abuses its discretion when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied."

---

[2] Yet, Mr. Diaz has proceeded *pro se* in both courts.

[3] Although given an opportunity to do so, Appellant declined to file a reply brief in support of this appeal. *See* [14].

3

*FCC v. Airadigm Commc'ns, Inc.*, 616 F.3d 642, 652 (7th Cir. 2010) (quoting *Corp. Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004)).

### III. Analysis

Appellant first criticizes the bankruptcy court for denying his sanctions motion. Although the court did at one point indicate that it was denying the motion, a review of the full hearing transcripts shows that the court actually agreed with Appellant that NMH may, in fact, have violated the automatic stay by trying to collect on pre-petition invoices before fulfilling the post-petition order.[4] The court stated:

> it looks as though Northwestern when it was originally contacted by Mr. Diaz, in explaining the whole – could have, I'm not saying they did – but they could have left the impression that they were essentially demanding payment for the prepetition debt in order to supply anything postpetition, and that would be a violation of the automatic stay. However, its not perfectly clear that's what happened. I've looked at the scripts, and, you know, one could have different understandings of what that meant. . . . I understand that Northwestern did investigate the situation, tried to explain the hold, and ultimately it's my understanding that Northwestern did , in fact, try to supply the supplies that Mr. Diaz had asked for in that one request that caused the problems here . . . .

[5-1] at 2–3.

---

[4] Although beside the point, if the bankruptcy court had decided to simply deny his motion, the record contains ample support for a denial as well. *See, e.g., In re Kuehn*, 563 F.3d 289, 291 (7th Cir. 2009) ("If Kuehn had attempted to purchase a transcript on credit, and the University, having been burned once, proved unwilling to make another loan, this would be an easy case" as "yesterday's failure to pay is a proper basis for tomorrow's refusal to extend credit"; § 362(a) applies "only when a creditor acts to collect a pre-petition or discharged debt."); *In re Moss*, 470 B.R. 505, 508 (Bankr. E.D. Wis. 2012) (finding that creditor's conduct in informing debtor "that new student loans were conditioned on the payment of pre-petition student loans did not violate the automatic stay"). The record shows that NMH took no act to coerce or harass Appellant into paying the pre-petition bills. Appellant's bankruptcy petition froze NMH's right to collect on pre-petition debt; it did not impose any obligation upon NMH to incur further harm by continuing to do business with Appellant. As the bankruptcy court correctly noted at the August 3 hearing, NMH had no obligation to "deal with him" on new debts. [5] at 7.

4

The court found that, if a violation occurred, it would impose, as an appropriate sanction, the nonmonetary sanction of requiring NMH to provide the medical equipment. *Id.* at 4. Because NMH had voluntarily done this by the time the substantive hearing rolled around, the court held that NMH had fulfilled its obligations, the issue was moot, and the matter closed. *Id.* at 4–5.

In this Court, Appellant argues that the bankruptcy court should have imposed a greater sanction and awarded compensatory and punitive damages. To support his claim, Appellant cites 11 U.S.C. § 362(k), which provides that "an individual injured by any *willful violation* of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C.A. § 362(k)(1) (emphasis added). But the bankruptcy court reasonably determined that any violation stemmed from a miscommunication and was thus not willful. The court's findings in this regard find support in the record and the law. *See, e.g., In re Payne*, No. BR 19 B 10450, 2019 WL 13152409, at *1 (Bankr. N.D. Ill. Oct. 31, 2019) ("A violation of the stay is deemed willful if a creditor (1) had actual notice of the bankruptcy filing and (2) commits a deliberate act" in violation of the stay; to find willfulness, "the court must find that the creditor's actions were intentional."). Appellant has offered no basis to conclude that the finding of nonwillfulness was "clearly erroneous," as is his burden. *See In re Kutrubis*, 486 B.R. 895, 900 (N.D. Ill. 2013), *aff'd*, 550 F. App'x 306 (7th Cir. 2013). Section 362(k) simply does not apply. As a result, the court's imposition of a

5

nonmonetary sanction, which gave Appellant exactly what he wanted from NMH,[5] remains entirely reasonable and proper.

## IV. Conclusion

For the reasons set forth above, this Court affirms the bankruptcy court's decision resolving Appellant's sanctions motion.

Dated: September 22, 2023

                                              Entered:

                                              John Robert Blakey
                                              United States District Judge

---

[5] Moreover, having received exactly what he wanted, for free, Appellant suffered no damages, a necessary prerequisite for relief under § 362(k). *See* 11 U.S.C. § 362(k)(1) ("an individual *injured* by any willful violation of a stay provided by this section shall recover *actual damages*. . . ."); *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001) (§362(k) provides for "relief designed to redress any financial injury inflicted by the violation of the automatic stay").